**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**LAWRENCE CAMPO, M.D.,**

        **Plaintiff,**

-vs-                                        **Case No. 6:02-cv-97-Orl-28KRS**

**CITY OF ORLANDO, LLOYD RANDOLPH, KEVIN BEARY, RON WILCOX,**

        **Defendants.**

_____

**REPORT AND RECOMMENDATION**

This cause came on for consideration without oral argument on Defendant Ron Wilcox's Motion to Determine Entitlement to Attorneys' Fees. Doc. No. 115. Campo filed a memorandum in opposition to the motion. Doc. No. 105. The Honorable Judge Antoon, II, the presiding district judge, referred this motion to me for issuance of a report and recommendation.

**I.    PROCEDURAL HISTORY.**

On January 28, 2002, the plaintiff, Lawrence Campo, filed a complaint against the defendants, City of Orlando, Florida (City), Lloyd Randolph, Kevin Beary, and Ron Wilcox. Doc. No. 1. The present case arises from Campo's arrest for felony delivery of a controlled substance in violation of section 893.13, Florida Statutes, on June 9, 2000. *Id.* ¶ 9. Campo, a physician, was arrested for prescribing controlled narcotics to patients who did not need them. *Id.* at 3-4. He was the target of an undercover investigation carried out by the defendants, in which an undercover police officer posed as a patient seeking prescriptions for medically unnecessary amounts of the pain-killer hydrocodone, also known under the trade name Vicodin. *Id.* Campo was arrested and

charged after prescribing Vicodin per the undercover officer's requests. *Id.* On the day Campo's trial was to begin, the State Attorney's Office elected not to prosecute the case because of concerns raised by an Assistant State Attorney that she could not prove facts that could establish guilt beyond a reasonable doubt. Doc. No. 89 at 1.

The City is a political subdivision of the State of Florida, Randolph is a law enforcement officer for the City of Orlando, Florida, Wilcox is a law enforcement officer for Orange County, Florida, and Beary is the Sheriff of Orange County, Florida. In his complaint, Campo alleged that Randolph and Wilcox, in their personal capacities, violated his constitutional rights by arresting him without probable cause, which is actionable under 42 U.S.C. § 1983. Doc. No. 1 ¶¶ 19-30. Campo further alleged that the City and Beary, in his official capacity as sheriff, violated section 768.28, Florida Statutes, by falsely arresting him. *Id.* ¶¶ 31-34.

In June and July 2003, Wilcox and Beary made two settlement offers to Campo. First, on June 17, 2003, they tendered an offer pursuant to section 768.79, Florida Statutes, for $10,000. Doc. No. 105 ex. B. This offer expressly stated that Beary offered $5,000.00 to settle the claims against him and Wilcox offered $5,000.00 to settle the claims against him. *Id.* Next, on July 8, 2003, they tendered another offer to settle for $10,000, this time pursuant to Federal Rule of Civil Procedure 68. Doc. No. 105 ex. A. The second settlement offer explained that it was meant to be an alternative to the first offer. *Id.* In the second settlement offer, the defendants did not allocate the sum being offered to settle claims against each of them, instead making a joint settlement offer. *Id.*

After extensive discovery, the defendants moved for summary judgment. Doc. No. 41. Subsequently, Judge Antoon granted this motion and the clerk of court entered a final judgment in favor of the defendants on July 17, 2003. Doc. Nos. 89, 90.

On July 31, 2003, Wilcox moved for an award of attorneys' fees and costs. Doc. Nos. 95, 96. However, on August 11, 2003, Campo filed notice that he was appealing the judgment against him to the United States Court of Appeals for the Eleventh Circuit. Doc. No. 100. Accordingly, Judge Antoon denied Wilcox's motion for attorneys' fees pending the outcome of Campo's appeal. Doc. No. 108. The Court of Appeals affirmed the judgment against Campo on January 21, 2005. Doc. No. 110. It transferred consideration of the issue of appellate attorney's fees to this Court. *Id.*

**II.   STATEMENT OF FACTS.**

The following facts are drawn from Judge Antoon's order granting summary judgment. Doc. No. 89. The events underlying this case began when nurse Valerie Warman contacted Randolph, a detective with the Orlando Police Department, to report that a doctor with whom she worked, Campo, was prescribing the drug Vicodin to patients with no medical need for it. *Id.* at 2. Because Campo's office was outside the jurisdiction of the Orlando Police Department, Randolph contacted Wilcox, an Orange County Sheriff's Deputy, regarding Warman's allegations. *Id.*

Wilcox and Deborah George, an investigator from the U.S. Drug Enforcement Administration (DEA), met with Warman to interview her about the allegations against Campo. *Id.* at 2. During the interview, Warman denied having any ill will towards Campo, and she explained that her primary reason for contacted the authorities was concern for her nursing license.

*Id.* at 3. Following this interview, Wilcox met with George and DEA agent Sharon Lynn, and the three agreed to conduct an undercover investigation of Campo to confirm Warman's allegations. *Id.*

On four separate occasions, Randolph visited Campo's office posing as a patient seeking medical treatment. *Id.* Randolph represented to Campo that he had suffered an injury to his ankle, and that, although the injury had healed, his previous physician had been prescribing Vicodin so that Randolph could perform his job installing tile. *Id.* Essentially, Randolph requested that Campo continue treating his ankle injury. *Id.* On Randolph's first visit, Campo prescribed him sixty tablets of Vicodin, and one tablet was to be taken twice each day. *Id.* This first prescription also provided for two refills and, therefore, would have lasted Randolph ninety days if taken according to Campo's instructions. *Id.*

Twenty-seven days after Randolph's first visit, he made another appointment with Campo to seek a refill of the Vicodin prescription. *Id.* During this visit, Randolph told Campo that his ankle was fine and that he was not in pain. *Id.* Campo nevertheless provided another prescription for Vicodin without inquiring into why Randolph had requested the refill prematurely. *Id.* at 4.

Thirty-five days after the second visit, Randolph arranged a third appointment with Campo. *Id.* During this visit, Randolph explained that he felt "all right," but was seeking another refill of his Vicodin prescription. *Id.* Campo obliged, and prescribed an additional sixty tablets with two refills for Randolph. *Id.* Approximately one month later, Randolph paid his final visit to Campo's office, again seeking a premature renewal of his Vicodin prescription. *Id.* At this final

appointment, Campo prescribed ninety tablets of Vicodin with one refill. *Id.*   In total, Campo prescribed approximately five hundred pills of Vicodin for Randolph over a four-month period.

At these appointments, Campo's investigation into Randolph's purported medical problems was minimal.  Diagnostic testing was limited to measurement of Randolph's weight and blood pressure, and, on one occasion, use of a stethoscope to listen to Randolph's lungs and heart. *Id.* Throughout the appointments, Randolph clearly indicated to Campo that he was no longer in pain, and gave Campo every opportunity and reason to deny him narcotic painkillers. *Id.*  At the close of the undercover investigation, Wilcox concluded that Campo had illegally provided prescriptions to Randolph. *Id.*

Based on the findings of the investigation, Wilcox obtained four arrest warrants from the Honorable Dorothy Russell, a Florida circuit court judge, charging Campo with nine counts of Delivering a Controlled Substance in violation of Florida law. *Id.* at 4-5.  On June 9, 2000, the Orange County Sheriff's Office arrested Campo and charged him with a felony violation of section 893.13(1)(a), Florida Statutes. *Id.* at 5.  However, the State Attorney's Office elected not to prosecute the case due to concerns regarding whether the Assistant State Attorney could prove facts that would establish Campo's guilt beyond a reasonable doubt. *Id.*

Campo filed the instant lawsuit alleging that his arrest was unlawful because there was no probable cause to arrest him.  Much of the discovery in this case concerned Wilcox's formulation of probable cause.

-5-

**III.     STANDARD OF REVIEW.**

A prevailing defendant in a civil rights case may only be awarded attorneys' fees if the plaintiff's claim "was frivolous, unreasonable, or groundless," or, in the event "that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422 (1978); *see also Hughes v. Rowe,* 449 U.S. 5, 14 (1980). A claim is frivolous if it lacks an arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

The United States Court of Appeals for the Eleventh Circuit considers the following factors to be important in determining whether a claim is frivolous: (1) whether the plaintiff established a *prima facie* case;  (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits. *Sullivan v. Sch. Bd. of Pinellas County,* 773 F.2d 1182, 1189 (11th Cir. 1985). These factors are "general guidelines only, not hard and fast rules." *Id.* When plaintiffs produce evidence sufficient to support their claims, findings of frivolity typically do not stand. *Id.* (citing *White v. South Park Indep. Sch. Dist.,* 693 F.2d 1163 (5th Cir. 1982); *Plemer v. Parsons-Gilbane,* 713 F.2d 1127 (5th Cir. 1983)).

Determinations of frivolity are to be made on a case-by-case basis. *Sullivan,* 773 F.2d at 1189. In *Christiansburg*, the Supreme Court cautioned as follows:

> it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable.

*Christiansburg,* 434 U.S. at 421-22.  A plaintiff's claim "should not be considered groundless or without foundation for the purpose of awarding fees to a prevailing defendant when the claims are meritorious enough to receive careful attention and review."  *Walker v. Nationsbank of Fla. N.A.,* 53 F.3d 1548, 1559 (11th Cir. 1995) (citing *Busby v. City of Orlando,* 931 F.2d 764, 787 (11th Cir. 1991); *O'Neal v. DeKalb County, Ga.,* 850 F.2d 653, 658 (11th Cir. 1988)).

In cases involving fees sought for defending an allegedly frivolous appeal, such as the present one, courts apply the *Christiansburg* standard to the facts surrounding the appeal to determine whether it was frivolous.  *Moulds v. Wal-Mart Stores, Inc.*, 935 F.2d 252, 257 (11th Cir. 1991).  Courts, in their discretion, "may award fees to a prevailing defendant where the plaintiff's appeal was frivolous, unreasonable, or groundless."  *Id.*

**IV.   ANALYSIS.**

Wilcox seeks compensation both for the attorneys' fees he incurred defending himself in this Court and on appeal.  The following analysis first considers whether Wilcox is entitled to fees for litigation in this Court, then considers his entitlement to fees with respect to appellate proceedings.

   A.   *Entitlement to Attorneys' Fees in this Court.*

In his motion for attorneys' fees, Wilcox contends that it was clear from the outset of this case, and became clearer as the parties conducted discovery, that probable cause existed for Campo's arrest.  The issue this motion presents is whether the existence of probable cause was so clear that Campo's pursuit of his claims was frivolous.  In analyzing this question, I will discuss the three primary factors that determine frivolity: (1) whether the plaintiff established a *prima facie*

-7-

case;  (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits.  *Sullivan,* 773 F.2d at 1189.

        1.     *Prima facie* case.

Proof that Campo was arrested without probable cause would have established a *prima facie* violation of section 1983.  *See Willits v. Garmire*, 386 F. Supp. 590, 592 (S.D. Fla. 1974).  Because Campo did not offer proof sufficient to establish that he was arrested without probable cause, he failed to establish a *prima facie* case.

Nevertheless, this was not an instance in which Campo failed to present evidence in support of his position.  As Judge Antoon stated in his summary judgment order, Detective Randolph, acting undercover, told Campo that he had suffered an injury to his ankle for which another physician had been treating him with Vicodin to help him perform work as a tile installer.  Doc. No. 89 at 3.  Campo testified that he examined Randolph and determined, based upon the patient's history, complaints of pain, and the examination that Randolph might suffer from degenerative joint disease.  Campo Depo., doc. no. 33 at 74-78.  Discovery disclosed that Randolph in fact had suffered an ankle injury before he visited Campo,  Wilcox Depo., doc. no. 50 at 11-12; Randolph Depo., doc. no. 35 at 48, for which Randolph's personal physician prescribed hydrocodone, Randolph Depo., doc. no. 35 at 48-49.

Both Judge Antoon and the judges considering the matter on appeal wrote opinions in which they gave careful review to the evidence presented by the parties.  Under these circumstances, the failure to establish probable cause does not equate with filing of a law suit that was frivolous, unreasonable, or groundless.  *See Busby*, 931 F.2d at 787 ("Our circuit has held that

the plaintiff's section 1983 claims should not be considered groundless or without foundation for the purpose of an award of fees in favor of the defendant when the claims are meritorious enough to receive careful attention and review."). Therefore, this factor weighs against an award of attorneys' fees.

        2.     <u>Settlement Offer</u>.

As recited above, the record in this case indicates that Wilcox and Beary posed two settlement offers to Campo. Initially, Wilcox offered $5,000.00 to settle the claims against him. In the second offer, however, Wilcox and Beary jointly offered $10,000 to settle the claims against them.

When a defendant makes a settlement offer that is considerable, this fact militates against a finding that the plaintiff's claims are frivolous. *Cordoba v. Dillard's, Inc.*, No. 6:01-CV-1132-ORL-19-KRS, 2003 WL 21499011, at *5-6 (M.D. Fla. June 12, 2003) (applying the *Sullivan* factors in the context of a disability discrimination case); *Jerelds v. City of Orlando*, 194 F. Supp. 2d 1305, 1311 (M.D. Fla. 2002). On the other hand, when a defendant makes only a nominal settlement offer, which is aimed purely at avoiding the expenses of protracted litigation, this factor militates in favor of a finding of frivolity. *Cordoba*, 2003 WL 21499011, at *6. Courts weigh three amounts to determine whether a settlement offer is nominal: (1) what the plaintiff demanded; (2) what the defendant offered as a settlement; and (3) what the defendant expected to save in legal expenses by settling rather than continuing to litigate. *Id.* For example, in *Cordoba*, this Court held that a settlement offer was nominal, because it was only 1.1% of the amount the plaintiff sought in damages. *Id.*

In the Joint Final Pretrial Statement, the only damages that Campo articulated with specificity were approximately $75,000.00 paid to defend the criminal case, although he also sought intangible damages for emotional distress and punitive damages in amounts to be awarded by the jury.  Doc. No. 59 at 45.  Assuming for purposes of this motion that $75,000.00 was the total damages at issue, Wilcox's offer to settle was between 7% ($5,000.00 offer) and 13% ($10,000.00 offer) of the amount Campo sought in damages.  Because the settlement offers were made only one month before the Court granted the motion for summary judgment, it not clear that Wilcox would have saved significant attorney's fees for litigation in this Court had the settlement offers been accepted.[1]   Under the circumstances, I conclude that the offers of settlement were more than nominal.  Therefore, this *Sullivan* factor militates against a finding the Campo's claims were frivolous.

       3.     <u>Stage of Litigation at Disposition</u>.

This case was resolved at the summary judgment stage of litigation before a full-blown trial on the merits.  Therefore, this *Sullivan* factor militates in favor of a finding that Campo's claims were frivolous.

       4.     <u>Conclusion</u>.

Two of the three *Sullivan* factors support a finding that Campo's claims were not frivolous.  Although the evidence Campo introduced ultimately failed to raise a disputed issue of fact regarding whether a reasonable person would have found probable cause for his arrest, there was

---

[1] It is impossible to compute the amount saved with specificity based on the current record.  Wilcox and Randolph shared the same counsel, and it is unclear what portion of the attorneys' fees and costs incurred were attributable to the defense of Wilcox alone.

not such a paucity of evidence that his claims were "unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421-22.  Moreover, the presiding district judge devoted "careful attention and review" to the issue of whether probable cause existed for Campo's arrest.  *Walker*, 53 F.3d at 1559.  Accordingly, I recommend that the Court conclude that Campo's claims were not frivolous such that they merit an award of attorneys' fees.

      B.      *Entitlement to Attorneys' Fees on Appeal.*

The Eleventh Circuit Court of Appeals has used *Christiansburg*'s "frivolous, unreasonable, or groundless" standard to determine whether a prevailing defendant may recover attorneys' fees for costs incurred defending a frivolous appeal in a civil rights case.  *Moulds*, 935 F.2d at 257. Another court has stated that award of attorneys' fees on appeal is only proper if the appeal was "insincere or entirely meritless."  *Buckley Towers Condominium, Inc. v. Buchwald*, 595 F.2d 253, 254 (5th Cir. 1979).  For example, when a United States Supreme Court decision clearly precluded the argument that a litigant pursued on appeal, his appeal was "palpably frivolous" and an award of attorneys' fees was merited.  *Collins v. Amoco Prod. Co.*, 706 F.2d 1114, 1115 (11th Cir. 1983).

In the present case, once Judge Antoon issued his order holding that Campo failed to raise any disputed issues of fact regarding probable cause, Campo was on notice that his legal position was not based on sufficient facts in the record, in the view of one reasoned jurist.  On the other hand, the Court of Appeals' analysis recites careful consideration of the evidence in the record before concluding that there was probable cause to support Campo's arrest. In light of the Court of Appeals' careful attention and review, I recommend that the Court find that Campo's appeal was not "insincere or entirely meritless," "palpably frivolous," or otherwise "unreasonable or

groundless." *Moulds*, 935 F.2d at 257; *Collins*, 706 F.2d at 1115; *Buchwald*, 595 F.2d at 254. Therefore, I recommend that Wilcox not be awarded attorneys' fees for his attorneys' work in defending Campo's appeal.

## V. RECOMMENDATION

For the reasons expressed in above, I respectfully recommend that the Court **DENY** Defendant Ron Wilcox's Motion to Determine Entitlement to Attorney's Fees, doc. no. 115.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 9, 2005.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties